UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPHINE CUEVAS-DUPREY,
as Personal Representative of
the Estate of NICOLE OCTAVIA KEY,
deceased,

    Plaintiff,

v.                                        Case No: 8:22-cv-00680-KKM-SPF

GENERAL ELECTRIC COMPANY
and PARATH ROD SOU,

    Defendants.
_____

## ORDER

Cuevas-Duprey, as Personal Representative of the Estate of Nicole Octavia Key, commenced this wrongful death action in Florida court. (Doc. 1-1 ¶ 1.) Defendants General Electric Company (GE) and Parath Rod Sou removed the case to this Court, arguing Cuevas-Duprey fraudulently joined Sou to prevent diversity jurisdiction. (Doc. 1 at 3.) Cuevas-Duprey disagreed and moved to remand to Florida court. (Doc. 20 at 3–4.) To establish jurisdiction in federal court, Defendants must show through clear and convincing evidence that there is no possibility Cuevas-Duprey can bring a claim against Sou. They have not met that burden, so Cuevas-Duprey's Motion is granted.

I.   BACKGROUND

South Bay Hospital underwent a multi-hour power outage on the morning of May 24, 2020. (Doc. 1-3 at 3.) Earlier that same morning, the hospital's emergency department admitted Key, a 26-year-old woman, after she complained of abdominal pain, chest pain, nausea, and vomiting. (Doc. 1-1 ¶ 2.) "[D]octors placed her on cardiac, oxygen saturation, and blood pressure monitoring with a Dash® 4000 Patient Monitor." (*Id.* ¶ 3.) The monitor features "audible and visible alarms that sound when a problem is detected by a monitor, including when a patient goes into cardiac arrest." (*Id.* ¶ 4.) Key later went into cardiac arrest and died. (*Id.* ¶¶ 5–8.) Because the monitor did not alert the emergency room staff, Key "was in cardiac arrest for a significant period of time without treatment before her physicians were alerted." (*Id.* ¶ 7.)

Sou, a Level 3 Biomedical Technician employee of GE, worked full-time at South Bay Hospital since 2018. (Doc. 1-3 at 1.) As part of his employment duties, Sou would repair, service, and maintain the monitor at issue using GE equipment. (Doc. 1-1 at 3.) Sometime around May 24, 2020—the day Key was admitted to the hospital and later died—Sou learned that "the central nursing station within the hospital's emergency department lost power and did not alert the staff to the patient monitors that had been triggered." (Doc. 1-3 at 3.)

On February 16, 2022, Cuevas-Duprey filed an Amended Complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging claims of strict liability and negligence against GE and a negligence claim against Sou. (Doc. 1-1 ¶¶ 24–55.) Defendants removed the case to this Court contending that diversity jurisdiction existed. (Doc. 1 at 1.)

Cuevas-Duprey moves to remand to Florida court. (Doc. 20.) Defendants oppose the motion. (Doc. 22.)

## II.   LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal court when the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). A federal court can decide a case under its diversity jurisdiction if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Parties are "complete[ly] divers[e]" when the plaintiff is not domiciled within the same state as any defendant. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994).

A plaintiff fraudulently joins a defendant when she names a non-diverse defendant to circumvent federal diversity jurisdiction. *See Henderson v. Washington Nat'l Ins. Co.*,

454 F.3d 1278, 1281 (11th Cir. 2006); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."). A defendant asserting fraudulent joinder bears the "heavy" burden of proving either that "there is no possibility the plaintiff can establish a cause of action against the resident defendant" or that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see Henderson*, 454 F.3d at 1281 (noting a defendant must prove fraudulent joinder with "clear and convincing evidence").

The district court must assess the factual allegations "in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538. The district court determines whether a party was fraudulently joined based on the plaintiff's pleadings at the time of removal and affidavits presented by the parties. *Id.*

Federal courts must not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.*; see *Triggs*, 154 F.3d at 1287 (explaining that joinder is legitimate even if the plaintiff presents only a "*possibility* of stating a valid cause of action" against the defendant). A federal court must remand the case to state court if there is even a possibility the plaintiff brought a viable claim against a defendant. *Stillwell*

4

*v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (noting the "possibility" standard is distinguishable—and more lenient—from the "plausibility" standard applied to a 12(b)(6) motion to dismiss); *see also Legg v. Wyeth*, 428 F.3d 1317, 1325, n.5 (11th Cir. 2005) (indicating the possible cause of action against the resident defendant must be "reasonable" and not "theoretical" (quotation omitted)).

Courts may award attorney's fees, costs, and expenses incurred from the removal when a case is remanded to state court. 28 U.S.C. § 1447(c). However, courts should only do so when the "removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). This standard "deter[s] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining [Congress's] basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140. In situations when the removal was for a "clearly improper purpose," courts will award fees and costs to the plaintiff. *See Casciani ex rel. Casciani v. La Cruise, Inc.*, No. 96–cv–1249, 1998 WL 34185289, at *6 (M.D. Fla. June 24, 1998) (Nimmons, J.).

### III. ANALYSIS

Cuevas-Duprey moves to remand this case to Florida court and for attorney's fees from Defendants. Because Cuevas-Duprey might possibly state a claim against Sou, who is domiciled in Florida, the parties are not completely diverse and this Court lacks diversity

5

jurisdiction to decide this case. But because Defendants' basis of removal was not objectively unreasonable, Cuevas-Duprey is not entitled to attorney's fees.

### A. Sou Is Not a Fraudulently Joined Party

Negligence is the only claim Cuevas-Duprey brings against Sou. (Doc. 1-1 ¶¶ 50–55.) Because Cuevas-Duprey's allegations sufficiently allege that Sou acted negligently under Florida law, it is possible for Cuevas-Duprey to state a claim against Sou. Thus, Cuevas-Duprey did not fraudulently join Sou to the lawsuit.

To state a negligence claim under Florida law, "a plaintiff must establish the four elements of duty, breach, proximate causation, and damages." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015). "Common law negligence is open-ended" and allows the "plaintiff to claim that any given conduct was negligent." *Kohl v. Kohl*, 149 So. 3d 127, 131 (Fla. 4th DCA 2014) (quotation omitted). Further, employees "may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005).

Here, Cuevas-Duprey sufficiently alleges a negligence claim against Sou for the purpose of determining whether Sou was a fraudulently joined party. (Doc. 1-1 ¶¶ 50–55.) First, Cuevas-Duprey alleges two duties that Sou owed to Key. She alleges that Sou "undertook a duty to adequately test, inspect, service, and maintain" the monitor at issue.

(*Id.* ¶ 52); *see Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003) ("Whenever one undertakes to provide a service to others . . . [he] assumes a duty to act carefully and to not put others at an undue risk of harm."). Although Sou states in his affidavit that he was neither made "aware of any failure in the functioning" of the monitor nor asked to "perform any repairs or additional preventative maintenance on the monitor" prior to May 24, 2020, (Doc. 1-3 at 4–5), Sou's affidavit does not clearly state that he never "undertook a duty to inspect, service, and maintain," (Doc. 1-1 ¶ 52), the monitor on May 24, 2020. After all, Sou declared that "[i]t was reported to [him] that, during the outage, the central nursing station within the hospital's emergency department lost power and did not alert the staff to the patient monitors that had been triggered." (Doc. 1-3 at 4.) But Sou fails to declare that he did not receive a service request on May 24, 2020. Sou could have undertaken—and does not deny in his affidavit—a duty to inspect and service the monitors following that kind of notice and he could have undertaken that duty prior to Key's cardiac arrest.

Cuevas-Duprey also alleges that Sou owed Key a duty to "warn or notify" Key and Key's doctors about the monitor's defective condition. (Doc. 1-1 ¶ 53.) Sou's affidavit fails to deny all possibilities that he owed this duty. Instead, Sou declares that he "do[es] not make representations or provide any warnings to physicians or hospital staff regarding the safety or efficacy of a device." (Doc. 1-3 at 5.) But Sou does not state that he had no duty

7

to warn or notify Key or Key's doctors. Defendants rely on Sou's statement that he completed all the necessary preventative measures before May 24, 2020, but fail to explain how the preventative measures could undermine a duty to warn, especially in the light of the conditions of the patient monitors following the power outage. (Doc. 1-3 at 4.)

Second, Cuevas-Duprey alleges Sou breached his duties. (Doc. 1-1 ¶ 54.) Because Key allegedly undertook a duty to "test, inspect, service, and maintain the monitor," (*Id.* ¶ 52), then it is possible that he did not exercise reasonable care because the monitor did not notify Key's physicians that she was in cardiac arrest. (*Id.* ¶ 6); see *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 560 (Fla. 4th DCA 2008) (requiring that a voluntarily undertaken duty "be performed in accordance with an obligation to exercise reasonable care"). Similarly, it is possible Sou breached his alleged duty to warn or notify Key and Key's doctors. Sou received notice that the monitors were not working properly because of the power outage and may have failed to exercise reasonable care in notifying Key and Key's doctors. (Doc. 1-3 at 4.)

Third, Cuevas-Duprey alleges Sou's breach of duties "actually and proximately caused" Key to suffer "injury and death." (Doc. 1-1 ¶ 36); see *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992) (defining proximate cause as the "extent the defendant's conduct foreseeably and substantially caused the specific injury"). If Sou undertook a duty and breached his duty, then it is possible his conduct actually and proximately caused Key's

8

injury and death because she was in cardiac arrest for a "significant period of time" due to the monitor not alerting staff of Key's condition. (Doc. 1-1 ¶ 7.)

Finally, Cuevas-Duprey alleges that Key died, and death satisfies Florida's requirement of damages for a negligence claim. *See N. Broward Hosp. Dist. v. Kalitan*, 219 So. 3d 49, 50 (Fla. 2017) (explaining the statutory cap on damages from a death caused by negligence); *see also* Fla Stat. § 768.20 (stating the decedent's personal representative shall recover for the estate damages). Thus, Cuevas-Duprey alleges a possible negligence claim against Sou in her Amended Complaint.

Defendants contend that the mere presence of an affidavit shifts the burden to Cuevas-Duprey to offer her own evidence in support of remand. (Doc. 22 at 5.) Of course, when a defendant opposes remand and provides an affidavit showing that the plaintiff's cause of action against the allegedly fraudulently joined defendant is impossible, the burden then shifts to the plaintiff to provide some evidence in support of her claim. *See Legg*, 428 F.3d at 1324 (concluding that a plaintiff fraudulently joined a defendant who "swore under oath" that he was not involved in the alleged conduct and the plaintiffs "never disputed" the statement). But Defendants never took the first step here. Defendants' affidavit fails to rebut the theory of negligence. Although the Amended Complaint might fail to state a claim on remand, that determination is not within the purview of this Court. *See Henderson*, 454 F.3d at 1284 ("[T]he decision as to the sufficiency of the pleadings is for

9

the state courts . . . ."). Even in the light of Defendants' affidavit, it is possible—even if unlikely—for Cuevas-Duprey to state a claim against Sou. Because Defendants did not meet their burden through clear and convincing evidence, Sou is not a fraudulently joined party.

### B. Attorney's Fees Are Not Warranted

Cuevas-Duprey asks the Court to award her attorney's fees incurred from the removal pursuant to 28 U.S.C. § 1447(c). (Doc. 20 at 10.) Although the Court rejected the Defendants' diversity of citizenship argument, Defendants had an objectively reasonable basis for believing removal to be proper because Sou presented an affidavit that could potentially raise doubt as to whether Sou owed a duty to Key or Key's doctors. Although Defendants' contention did not meet the burden required for the fraudulent joinder standard, it was nonetheless objectively reasonable. *See Martin*, 546 U.S. at 136 ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). Therefore, the Court denies Cuevas-Duprey's fee request.

### IV. CONCLUSION

Defendants have not established that there is no possibility Cuevas-Duprey can establish a cause of action against Sou. Thus, Sou remains a proper defendant in this action and the parties are not completely diverse. Because the parties are not completely diverse,

this Court lacks diversity jurisdiction. Lacking jurisdiction, the Court remands this action to Florida court.

Accordingly, the following if **ORDERED:**

1. Plaintiff's Motion to Remand to State Court is **GRANTED**. (Doc. 20.)

2. Plaintiff's request for attorney's fees and costs is **DENIED**. (Doc. 20.)

3. The Clerk is directed to **REMAND** this action to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, to terminate all pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on June 21, 2022.

Kathryn Kimball Mizelle
United States District Judge

11