## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSEPHINE CUEVAS-DUPREY,
as Personal Representative of
the Estate of NICOLE OCTAVIA KEY,
deceased,

      Plaintiff,

v.                              Case No: 8:22-cv-00680-KKM-SPF

GENERAL ELECTRIC COMPANY
and PARATH ROD SOU,

      Defendants.

_____

## ORDER

Josephine Cuevas-Duprey, as Personal Representative of the Estate of Nicole Octavia Key, sued General Electric Company (GE) and Parath Rod Sou in Florida court. Defendants removed the case to this Court, arguing Cuevas-Duprey fraudulently joined Sou to prevent diversity jurisdiction. (Doc. 1 at 3.) Cuevas-Duprey disagreed and moved to remand to Florida court. (Doc. 20 at 3–4.) Because Defendants failed to show through clear and convincing evidence that there is no possibility Cuevas-Duprey could bring a claim against Sou, the Court remanded the case to Florida court. Now, Defendants move

for reconsideration on the basis that this Court misunderstood the facts. Their arguments fail and their motion is denied.

## I.    BACKGROUND[1]

South Bay Hospital underwent a multi-hour power outage on the morning of May 24, 2020. (Doc. 1-3 at 3.) Earlier that same morning, the hospital's emergency department admitted Key, a 26-year-old woman, after she complained of abdominal pain, chest pain, nausea, and vomiting. (Doc. 1-1 ¶ 2.) "[D]octors placed her on cardiac, oxygen saturation, and blood pressure monitoring with a Dash® 4000 Patient Monitor." (*Id.* ¶ 3.) The monitor features "audible and visible alarms that sound when a problem is detected by a monitor, including when a patient goes into cardiac arrest." (*Id.* ¶ 4.) Key later went into cardiac arrest and died. (*Id.* ¶¶ 5–8.) Because the monitor did not alert the emergency room staff, Key "was in cardiac arrest for a significant period of time without treatment before her physicians were alerted." (*Id.* ¶ 7.)

Sou, a Level 3 Biomedical Technician employee of GE, worked full-time at South Bay Hospital since 2018. (Doc. 1-3 at 1.) As part of his employment duties, Sou would repair, service, and maintain the monitor at issue using GE equipment. (Doc. 1-1 at 3.) Sometime on or after May 24, 2020—the day Key was admitted to the hospital and later

---

[1] Other than the discussion of the rationale in the remand order, this summary of facts is taken substantially verbatim from the remand order's discussion of the facts. (Doc. 29); *see Cuevas-Duprey v. Gen. Elec. Co.*, No. 8:22-cv-680, 2022 WL 2208326, at *1 (M.D. Fla. June 21, 2022).

died—Sou learned that "the central nursing station within the hospital's emergency department lost power and did not alert the staff to the patient monitors that had been triggered." (Doc. 1-3 at 4.)

On February 16, 2022, Cuevas-Duprey filed an Amended Complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging claims of strict liability and negligence against GE and a negligence claim against Sou. (Doc. 1-1 ¶¶ 24–55.) Defendants removed the case to this Court contending that diversity jurisdiction existed. (Doc. 1 at 1.)

Cuevas-Duprey moved to remand to Florida court. (Doc. 20.) The Court granted the motion, reasoning that Defendants failed to show through clear and convincing evidence that Cuevas-Duprey could not possibly state a claim of negligence against Sou. (Doc. 29.) The order noted that Cuevas-Duprey alleged that Sou owed Key two duties, to service the device and to warn Key and Key's doctors when the device became defective. (*Id.* at 6–7.) Although Defendants filed an affidavit from Sou attempting to demonstrate that no facts could render Cuevas-Duprey's allegations of negligence plausible, the order concluded that his affidavit failed to show that he never undertook a duty to service the device during the relevant time or to warn Key and Key's doctors, and thus the claim may be *possible*, even if unlikely. (*Id.* at 6–8.)

Defendants now move to reconsider the decision to remand under Rule 60(b), a motion that Cuevas-Duprey opposes. (Doc. 30; Doc. 35.) Defendants also ask for oral argument and a reply to Cuevas-Duprey's response to the motion. (Doc. 31.)

## II.    LEGAL STANDARD

Rule 60(b) permits relief from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A court may also grant a Rule 60(b) motion for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under this provision is an "extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.3d 677, 680 (11th Cir. 1984). The moving party must show that "an 'extreme' and 'unexpected' hardship will result" absent relief. *Id.* (quoting *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932)). A motion for reconsideration under Rule 60(b) "cannot be used to relitigate old matters or present arguments or evidence that the movant could have raised before the entry of judgment." *Imperato v. Hartford Ins. Co.*, 803 F. App'x 229, 231 (11th Cir. 2020) (per curiam).

A plaintiff fraudulently joins a defendant when she names a non-diverse defendant to circumvent federal diversity jurisdiction. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an

exception to the requirement of complete diversity."). A defendant asserting fraudulent joinder bears the "heavy" burden of proving through clear and convincing evidence either that "there is no possibility the plaintiff can establish a cause of action against the resident defendant" or that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Henderson*, 454 F.3d at 1281.

## III.   ANALYSIS

The remand order concluded that Cuevas-Duprey did not fraudulently join Sou. The order explained that, because Cuevas-Duprey alleges that Sou owed Key two duties and that Defendants failed to show through clear and convincing evidence that Sou could not possibly owe those duties based on the facts as alleged, Defendants failed to show fraudulent joinder. Defendants move to reconsider the decision. Defendants argue that the remand order rested on "three critical mistakes of fact" and that, when the evidence is correctly apprehended, remand is inappropriate. (Doc. 30 at 2.) Their arguments fail.

Two matters require preliminary discussion before addressing whether the remand order relied on "critical mistakes of fact." First, Defendants attempt to rebut the Court's understanding of the facts by filing a supplemental affidavit from Sou dated June 22, 2022. (Doc. 30-1.) They contend that this affidavit shows that Sou could not possibly have owed Key a duty. Undoubtedly, the supplemental affidavit clarifies important details absent in

Sou's initial affidavit. But under Rule 60(b)(2), a movant may move for relief based on "*newly discovered* evidence that the movant could not have discovered earlier with due diligence." *Imperato*, 803 F. App'x at 230 (emphasis added). Defendants do not argue or prove that Sou's supplemental affidavit is newly-discovered evidence, so that subsection does not apply.

Rule 60(b)(6) also permits a party to move for relief for "any reason that justifies relief." Although this provision might permit consideration of evidence that was available at the time of the original motion, it is "an extraordinary remedy, invokable only in exceptional circumstances that, without relief, would cause extreme or unexpected hardship." *Imperato*, 803 F. App'x at 231. Defendants' prospect of litigating in Florida court is not an "extreme or unexpected hardship." *Id.*; *see Albors Gonzalez v. Fed. Nat'l Mortg. Ass'n*, 803 F. App'x 226, 229 (11th Cir. 2020) (per curiam) (concluding that litigating in a forum outside the movant's preferences is not a "exceptional circumstance[]" requiring relief under Rule 60(b)(6)).

Defendants disagree, relying on an Eleventh Circuit case that held a district court did not abuse its discretion in considering supplemental affidavits to grant reconsideration of a dismissal order. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993). But that decision does not purport to require courts to consider evidence that was previously available to a party moving to reconsider a remand

order. Instead, the decision—admittedly oblique on this point—is best read to permit courts to consider supplemental affidavits needed to establish jurisdiction. *See id.* at 806 (emphasizing that a trial court possesses discretion to consider affidavits that provide "further particularized allegations of facts deemed supportive of plaintiff's standing" (quotation omitted)). It is unclear whether *Region 8* addressed a Rule 59(e) or 60(b) motion. But to read the decision to bless supplemental affidavits under Rule 60(b)(2) would undermine the plain language of the rule, which permits consideration of *newly* discovered evidence. And, as discussed above, Defendants make no showing of "extreme . . . hardship" that would permit them to receive relief under Rule 60(b)(6).

Second, Defendants argue in several portions of their motion that Sou's initial affidavit made Ceuvas-Duprey's negligence against him implausible. (Doc. 30 at 3, 5, 7, 9, 10, 11 n.3.) But, as described in the remand order, Defendants' burden in their removal and opposition to remand was to show that Cuevas-Duprey's claim against Sou was not *possible* under Florida law. *See Crowe*, 113 F.3d at 1538. Defendants fail to explain why plausibility instead of possibility governs Cuevas-Duprey's negligence claim against Sou.

Turning to the merits of their arguments, Defendants fail to demonstrate that the Court misapprehended the facts as contained in Sou's initial affidavit, the only one it may consider. The first "critical mistake of fact" that Defendants believe the Court made in its remand order was stating that "Sou was aware in *real-time* of the power outage." (Doc. 30

at 8.) According to Defendants, this factual finding lacked a basis in Sou's affidavit or Cuevas-Duprey's complaint. To start, Sou's initial affidavit provides at least an arguable basis for concluding that he learned of the outage "in real time." (*Id.*); *see Crowe*, 113 F.3d at 1538 ("[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."). In Sou's initial affidavit, he stated that "[i]t was reported to [Sou] that, during the outage, the central nursing station within the hospital's emergency department lost power and did not alert the staff to the patient monitors that had been triggered." (Doc. 1-3 at 4.) That statement can reasonably be interpreted to mean that Sou received reports "during the outage" or shortly thereafter that same day. Regardless of whether this is the best reading, Sou fails to foreclose anywhere in his initial affidavit that the monitors failed to function properly during a power outage. Nor does his initial affidavit foreclose the possibility that he received a service request shortly after they stopped functioning properly and undertook a duty to service them.

The second "critical fact" that Defendants contend the Court misapprehended was that Sou could have "possibl[y] . . . received a service request for the Dash Monitor on May 24, 2020." (Doc. 30 at 8.) Defendants contend that Cuevas-Duprey made no such allegation and Sou "directly contradict[s]" the fact in his affidavit. (*Id.*) Defendants overread Sou's initial affidavit, which does not "directly contradict[]"that Sou received a

service request on May 24, 2020. Defendants correctly summarize Sou's affidavit as stating that "he last serviced the device on July 10, 2019," did not "service the device again," and "could only service the device upon request by the Hospital." (Doc. 1-3 at 4–5; Doc. 30 at 9.) But none of these statements preclude the possibility that the hospital requested him to service the device on May 24, 2020, during or shortly after the outage. To be sure, Sou's supplemental affidavit asserts that he never received such a request, but that new allegation cannot be considered now. Defendants fail to show a mistake of fact on this point based on the record presented to the Court at the time of the remand order.

The third "critical fact" that Defendants contend the Court mistakenly found was that Sou "allegedly undertook a duty to test, inspect, service, and maintain the monitor." But Defendants offer no facts that the Court misapprehended. Instead, they argue that "it is not possible that . . . Sou undertook such a duty given the facts set forth" in Sou's affidavit. (*Id.* at 9.) Defendants argue that Sou could not have undertaken a duty because he serviced the Dash Monitor nearly one year prior to Key's death, "never touched the device again," and the hospital never made a request for him to do so before May 24, 2020. (*Id.*) Those facts, however, rely once again on Sou's supplemental affidavit instead of solely on his initial affidavit. To that extent, the Court did not misapprehend the facts presented to it at the time of the remand order. To the extent Defendants rely only on the initial affidavit, they identify no facts that the Court mistook, rendering their argument that the

Court misapplied the law, not the facts. *See Kemp v. United States*, 142 S. Ct. 1856 (2022) (holding that "mistake" in Rule 60(b)(1) "includes legal errors made by judges"). But they fail to show such an error.

Although Defendants contend that there was no conceivable "set of facts" where Sou performed his job negligently, they offer no legal authority showing that it is not even possible under Florida law that Cuevas-Duprey's claim could succeed. Defendants rely solely on the fact that nearly a year had passed without Sou touching the device and that it had worked properly during that time. But their argument assumes that the alleged duty that Sou breached was the duty to perform his job reasonably when he serviced the device on July 10, 2019. Not so. The duties that the Court concluded Defendants failed to rebut with clear and convincing evidence were Sou's duty to service the device on May 24, 2020, the day of the outage, and to warn Key and Key's doctors that the device malfunctioned. He could have owed this duty because Defendants failed to show that he could not possibly have learned of the outage and malfunctioning of the device and not voluntarily undertaken to service the device and warn of its dangers. Under this theory, it is irrelevant whether Sou reasonably performed his job when he serviced the device in July of 2019.[2]

---

[2] In responding to Defendants' motion for reconsideration, Cuevas-Duprey appears to operate under the same misconception as Defendants that the Court concluded that Sou breached his duty to adequately service the monitor when he serviced the device in July 2019. Although that is not how the Court concluded that Cuevas-Duprey possibly stated a negligence claim against Sou, the sufficiency of that theory is an issue for state court.

Defendants muster a final argument, nested only in a footnote, that contends the Court mistakenly relied on the lack of a specific statement from Sou that he "had no duty to warn." (Doc. 30 at 11 n.3.) Defendants note that such "an averment" from Sou would be an "improper legal conclusion." (*Id.*) That may be so, but the remand order did not demand a specific denial that Sou owed a duty as a legal matter. Instead, the order relied on the nonexistence of averments from Sou rebutting the possibility that Sou voluntarily undertook a duty to warn when a power outage caused the product to malfunction that he services, risking the health of patients.[3]

## IV.   CONCLUSION

Defendants move for relief from the Court's remand order but fail to show any errors of law or fact requiring vacatur of the remand order. Accordingly, their motion is **DENIED**. (Doc. 30.) Because oral argument and a reply are unnecessary to the resolution of Defendants' motion, their request for argument and additional briefing is **DENIED**. (Doc. 31; Doc. 36.)

---

[3] To the extent that the order appeared to rely on Sou's failure to deny he had a duty as a legal matter by stating that "Sou d[id] not state that he had no duty to warn or notify Key or Key's doctors," the statement should be understood as short-hand for the fact that Sou failed to aver facts rebutting a duty in the circumstances described above. (Doc. 29 at 7–8.)

**ORDERED** in Tampa, Florida, on July 10, 2022.

Kathryn Kimball Mizelle
United States District Judge